UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

CLAUDINE WILSON,

          *Plaintiff*,

v.

VIACOM INTERNATIONAL MEDIA NETWORKS,

          *Defendant*.

------------------------------------------------------------------------x

15 CV 7424

**COMPLAINT**

Plaintiff Claudine Wilson, by her counsel, The Harman Firm, PC, alleges for Complaint against Defendant Viacom International Media Networks as follows:

## PRELIMINARY STATEMENT

1. In this employment discrimination action, Plaintiff Claudine Wilson ("Plaintiff" or "Ms. Wilson") seeks damages and costs against Defendant Viacom International Media Networks ("Defendant" or "Viacom") for discriminating against Plaintiff by subjecting her to a hostile work environment based on race, and retaliating against her for complaining about such discrimination in violation of the Civil Rights Act of 1886, 42 U.S.C. § 1981 ("§ 1981"), and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101–131.

## JURISDICTION AND VENUE

2. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims as Defendant violated Plaintiff's rights under § 1981.

3. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims brought under the NYCHRL.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York as a substantial part of the events giving rise to Plaintiff's claims occurred within this district.

## TRIAL BY JURY

5. Plaintiff respectfully requests a trial before a jury.

## PARTIES

6. At all times relevant hereto, Plaintiff Claudine Wilson was a resident of Kings County in the State of New York.

7. Upon information and belief, at all times relevant hereto, Defendant Viacom was a corporation organized under the laws of Delaware, with its principal place of business located at 1515 Broadway, New York, New York 10036.

## STATEMENT OF FACTS

8. Claudine Wilson is an African American woman.

9. Ms. Wilson worked for Viacom from 2003 to 2006, and again from 2008 through July of 2015.

10. In 2008 Ms. Wilson was hired as a Finance Analyst.

11. In and around 2009, Ms. Wilson was promoted to Senior Analyst.

12. In and around 2012, a coworker overheard Leda Connaughton-Deeny, who was assigned to be Ms. Wilson's new Supervisor, refer to Ms. Wilson as "the grumpy black girl" to a Viacom employee.

13. This coworker informed Ms. Wilson of this comment; Ms. Wilson was deeply offended and immediately followed proper Viacom protocol by filing a complaint with the company's Human Resources Department ("HR").

14. Ms. Connaughton-Deeny has a friendship with Ms. Wilson's Supervisor, Joel Krutz.

15. Immediately after Ms. Wilson filed her complaint with HR about Ms. Connaughton-Deeny's racially offensive remarks, Mr. Krutz began to treat Ms. Wilson markedly differently than his other employees who had not made complaints.

16. Mr. Krutz began to isolate Ms. Wilson in the workplace by excluding her from decision making, denying her performance feedback, and restricting her ability to advance and/or move to a different direction at Viacom.

17. Mr. Krutz also retaliated against Ms. Wilson for making a complaint with HR by stripping her of her job responsibilities.

18. Nonetheless, Ms. Wilson performed her job responsibilities to the best of her abilities, and continued trying to advance at Viacom.

19. In continuing retaliation, Mr. Krutz adamantly refused to promote Ms. Wilson despite her being qualified for several available positions.

20. On or about July 12, 2012, Ms. Wilson brought a formal complaint to HR about Mr. Krutz's refusal to promote her.

21. On or about the same day, an investigation was conducted by Viacom's EVP of Human Resources and Administration.

22. Mr. Krutz harassingly questioned Ms. Wilson about her complaint. Ms. Wilson referred him to HR.

23. HR representative, Melissa Decew had to ask Mr. Krutz to "back off."

24. In and around August 2012, shortly after Ms. Wilson lodged this complaint, Mr. Krutz yielded and promoted Ms. Wilson to Finance Manager solely because he was ordered to do so by the head of Human Resources.

25. Ms. Wilson's promotion only further exacerbated Mr. Krutz's vindictiveness. Mr. Krutz's isolation and exclusion of Ms. Wilson became more pronounced and he continued to pass her over for advancement.

26. Mr. Krutz did not treat Ms. Wilson's white coworkers in this manner.

27. In 2015, Ms. Connaughton-Deeny, the speaker of the "grumpy black girl" comment, was promoted to Vice President of Finance.

28. Ms. Connaughton-Deeny's new role with Viacom put her in a position to influence decisions pertaining to Ms. Wilson's employment.

29. In and around April 2015, Ms. Wilson was purportedly terminated as a part of a reduction in force. Upon information and belief, Ms. Connaughton-Deeny influenced the selection of Ms. Wilson for termination in retaliation for her past complaints.

30. Ms. Wilson was the only employee terminated from her working group.

31. Ms. Wilson was terminated even though there was one or more open positions in her department for which she was qualified. Viacom's decision to terminate Ms. Wilson rather than promote her to a vacant position further indicates that the reason for her termination was not economic but rather illegal retaliation.

32. Ms. Wilson is currently unemployed.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Employment Discrimination in Violation of the Civil Rights Act of 1886, 42 U.S.C. § 1981**

33. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 32 with the same force as though separately alleged herein.

34. § 1981 prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race.

35. Defendant discriminated against Plaintiff by subjecting her to offensive, racially-motivated comments, treating her less well than her non-black coworkers, and ultimately terminating her because of her race.

36. As a direct and proximate consequence of Defendant's race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

37. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### SECOND CAUSE OF ACTION
**Retaliation in Violation of the Civil Rights Act of 1886, 42 U.S.C. § 1981**

38. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 37 with the same force as though separately alleged herein.

39. § 1981 prohibits employers from retaliating against any employee for making a complaint of racial discrimination.

40. Plaintiff complained to Defendant regarding an offensive, racially discriminatory comment.

41. Defendant retaliated against Plaintiff by, *inter alia*, denying her promotions, ostracizing her at work, and ultimately terminating her because of her complaints about offensive racial remarks.

42. As a direct and proximate consequence of Defendant's race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

43. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### THIRD CAUSE OF ACTION
### Race Discrimination in Violation of the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101–8-131

44. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 43 with the same force as though separately alleged herein.

45. The NYCHRL prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race.

46. Defendant discriminated against Plaintiff by subjecting her to offensive, racially-motivated comments, treating her less well than her non-black coworkers, and ultimately terminating her because of her race.

47.     As a direct and proximate consequence of Defendant's race discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

48.     Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### FOURTH CAUSE OF ACTION
**Retaliation in Violation of the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101–8-131**

49.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 48 with the same force as though separately alleged herein.

50.     The NYCHRL prohibits employers from discriminating again their employees by subjecting them to hostile work environments based on race.

51.     Plaintiff complained to Defendant regarding an offensive, racially discriminatory comment.

52.     Defendant retaliated against Plaintiff by, *inter alia*, denying her promotions, ostracizing her at work, and ultimately terminating her because of her complaints about offensive racial remarks.

53.     As a direct and proximate consequence of Defendant's gender discrimination, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

## Request for Relief

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. for the first claim, actual damages to be determined at trial, but in no event less than $500,000;

B. for the second claim, actual damages to be determined at trial, but in no event less than $500,000;

C. for the third claim, actual damages to be determined at trial, but in no event less than $500,000;

D. for the fourth claim, actual damages to be determined at trial, but in no event less than $500,000;

E. an award of compensatory and punitive damages;

F. pre-judgment and post-judgment interest;

G. attorneys' fees and costs; and

H. such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 18, 2015

By: _____
Walker G. Harman, Jr. [WH-8044]
Owen H. Laird [OL-6994]
THE HARMAN FIRM, P.C.
*Attorneys for Plaintiff*
1776 Broadway, Suite 2030
New York, NY 10019
(212) 425-2600
wharman@theharmanfirm.com
olaird@theharmanfirm.com